BORIS FELDMAN, State Bar No. 128838
boris.feldman@freshfields.com
DORU GAVRIL, State Bar No. 282309
doru.gavril@freshfields.com
CARL HUDSON, State Bar No. 317201
carl.hudson@freshfields.com
OLIVIA ROSEN, State Bar No. 340120
olivia.rosen@freshfields.com
J. MIA TSUI, State Bar No. 344251
mia.tsui@freshfields.com
FRESHFIELDS BRUCKHAUS DERINGER US LLP
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250

*Attorneys for Defendants TriplePoint Venture
Growth BDC Corp., James P. Labe, Christopher
M. Mathieu, and Sajal K. Srivastava*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| DEREK PETERSEN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TRIPLEPOINT VENTURE GROWTH BDC CORP., JAMES P. LABE, CHRISTOPHER M. MATHIEU, and SAJAL K. SRIVASTAVA,<br><br>Defendants. | Case No.: 3:23-cv-02980-TLT<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Date:      February 20, 2024<br>Time:     1:30 p.m.<br>Location:  Courtroom 9 – 19th Floor<br>Judge:    Hon. Trina L. Thompson |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION..................................................................................................................1

ARGUMENT........................................................................................................................2

    I. PLAINTIFF FAILS TO SAVE HIS DEFICIENT SCIENTER ALLEGATIONS.........................2

        A. Plaintiff Abandons His Failed Scheme Claim.................................................2

        B. Plaintiff Asserts Only Boilerplate Motive and Opportunity Allegations..............................2

            1. Plaintiff ignores Defendants' motives to accurately record loans....................................2

            2. Plaintiff concedes he alleges normal business motives, not fraud....................................3

            3. Plaintiff disregards contrary evidence to allege opportunity............................................4

        C. Plaintiff Does Not Allege What Information Defendants Accessed..................................4

        D. Plaintiff Cannot Resuscitate His Boilerplate Core Operations Allegations........................5

    II. PLAINTIFF FAILS TO PLEAD ANY FALSE OR MISLEADING STATEMENTS................6

        A. TriplePoint's Business Model Incorporates Bankruptcy Risk...........................................6

        B. No Legal Authority for Conclusion that Fair Value Estimates Were False..........................7

            1. Plaintiff attempts to evade subjective falsity requirement...............................................7

            2. Plaintiff still fails to plead that fair value estimates were objectively false.......................8

            3. Fair value estimates are forward looking even if incorporating current values...............9

        C. No False Statements About TriplePoint's Investment Quality............................................10

            1. The Ninth Circuit bars fraud by hindsight.......................................................................10

            2. "Quality" statements are incapable of objective verification...........................................10

        D. Plaintiff's Challenge to TriplePoint's Risk Disclosures Misses the Point..........................11

            1. "Timing" of disclosures is irrelevant................................................................................11

            2. TriplePoint's disclosures were the opposite of boilerplate...............................................12

            3. Plaintiff still pleads no duty to disclose additional information about TriplePoint's portfolio companies..........................................................................................................12

        E. "Risk Rating" Argument Reveals Plaintiff's Confusion....................................................13

    III. PLAINTIFF CONCEDES HE DOES NOT PLEAD CAUSATION......................................13

        A. Biased Short-seller Report Does Not Share New Information to the Market.......................13

            1. As a matter of law, Plaintiff cannot rectify Amended Complaint's sloppy allegations..13

            2. The Bear Cave report adds nothing new to the market....................................................14

         B. Plaintiff Attempts to Shift the Burden of Alleging a Loss to Defendants............................14

            1. Plaintiff, not Defendants, must allege loss.......................................................................14

            2. Plaintiff's corrective disclosures are all deficient............................................................15

CONCLUSION...................................................................................................................15

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page**

*Abrams v. Blackburne & Sons Realty Capital Corp.*
2019 WL 8640656 (N.D. Cal. Dec. 2, 2019)……………………………...…………..…… 3

*In re Amarin Corp. PLC Secs. Litig.*,
2016 WL 1644623 (D.N.J. Apr. 26, 2016)…………………………...…..…………….. 9

*Bajjuri v. Raytheon Techs. Corp.*,
2023 WL 3650554, at *8 (D. Ariz. May 25, 2023)…………………………..………..…. 9

*Barnes v. Edison Int'l*,
2021 WL 2325060 (C.D. Cal. Apr. 27, 2021)…………………………………………… 5

*Berg v. Velocity Fin. Inc.*,
2021 WL 268250 (C.D. Cal. Jan. 25, 2021).................................................................. 11

*Berson v. Applied Signal Technology, Inc.*,
52 F.3d 982, (9th Cir. 2008)................................................................................. 12

*In re BofI Holding, Inc. Secs. Litig.*,
977 F.3d 781  (9th Cir. 2020)………………………………………………………….. 13

*Carr v. Zosano Pharma Corp.*,
2021 WL 3913509 (N.D. Cal. Sept. 21, 2021)……………………………………….... 6

*City of Dearborn Heights Act 345 Pol. & Fire Ret. Sys. v. Align Tech.*,
856 F.3d 605, 613-14 (9th Cir. 2017)……………………………………………… 6, 7

*City of Roseville Emples. Ret. Sys. v. Sterling Fin. Corp.*,
963 F.Supp. 2d 1092 (E.D. Wash. Aug. 5, 2013)…………………………………….. 9

*In re Countrywide Financial*,
588 F. Supp. 2d 1132 (C.D. Cal. Dec. 1, 2008)…………………………...…………….. 10

*Cutera Securities Litigation v. Conners*,
610 F.3d 1103 (9th Cir. 2010)…………………………………………...…….. 10, 11

*In re Daou Sys., Inc.,*
411 F.3d 1006 (9th Cir. 2005)…………………………………………………….... 13

*Dura Pharms., Inc. v. Broudo*
544 U.S. 336 (2005)……………………………………………………….. 13

*Durning v. First Bos. Corp.*,
815 F.2d 1265 (9th Cir. 1987)…………………………………………….. 11

*Eng v. Edison Int'l*,
2018 WL 1367419 (S.D. Cal. Mar. 16, 2018)...………………………………. 15

*Freudenberg v. E\*Trade Financial Corp.*,
    712 F. Supp. 2d 171, (S.D.N.Y. 2010)...…………..………………………………….... 10

*Glazer Capital Management LP v. Magistri*
    549 F.3d 736, 748 (9th Cir. 2008)…………....………………………………..……… 3

*Hoang v. ContextLogic, Inc.*
    2023 WL 6536162 (N.D. Cal. Mar. 10, 2023)….……………………………………… 5

*In re Intel Corp. Sec. Litig.*,
    2023 WL 2767779 (N.D. Cal. Mar. 31, 2023)….…………………………………….… 6

*In re Invensense, Inc. Securities Litigation,*
    2016 WL 1182063 (N.D. Cal. Mar. 28, 2016))….……..……….……………………… 9

*Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*,
    998 F.3d 397 (9th Cir. 2021)….………………………………….…………….. 13, 15

*Jedrzejczyk v. Skillz Inc.*,
    2022 WL 2441563 (N.D. Cal. July 5, 2022)….………………………………………… 13

*Kniss v. Booth*,
    2010 WL 11506619 (C.D. Cal. Jan. 4, 2010)….……………………………………… 10

*Livid Holdings, Ltd. v. Salomon Smith Barney, Inc.*,
    416 F.3d 940, 947 (9th Cir. 2005)….…………………………………….…………… 12

*Lopes v. Fitbit, Inc.*,
    2020 WL 1465932 (N.D. Cal. Mar. 23, 2020)….……………………………………… 4

*Mahapatra v. Truecar, Inc.*,
    2015 WL 12552062 (C.D. Cal. Dec. 9, 2015)….………………………………….…… 2

*In re Nektar Therapeutics Sec. Litig.*,
    34 F.4th 828 (9th Cir. 2022)….…………………………………………………… 14, 15

*In re New Century*,
    588 F. Supp. 2d 1206 (C.D. Cal. 2008)….…………………………………….…..…… 11

*Nguyen v. Radient Pharm. Corp.*,
    2011 WL 5041959 (C.D. Cal. Oct. 20, 2011)......…………………………………..…… 14

*Peters v. Colony Credit Real Estate, Inc.*,
    2021 WL 4813762 (C.D. Cal. June 7, 2021)….……………………………………… 8

*In Re Pivotal Sec. Litig.*,
    2020 WL 4193384 (N.D. Cal. July 21, 2020)…..............................................................13

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
    759 F.3d 1051 (9th Cir. 2014)...............................................................................10

*Primo v. Pac. Biosci. of Cal., Inc.*,
    940 F. Supp. 2d 1105 (N.D. Cal. 2013)….…………………………………………… 13

*Prodanova v. H.C. Wainwright & Co., LLC,*
    993 F.3d 1097 (9th Cir. 2021)……………………………………………………… 5

*In Re Questcor Sec. Litig.,*
    2013 WL 5486762 (C.D. Cal. Oct. 1, 2013)……………………………………… 12

*In re Rigel Pharms, Inc. Sec Litig.,*
    697 F.3d 869 (9th Cir. 2012)…………………………………………………...… 4

*Seaman v. California Business Bank,*
    2014 WL 1339649 (N.D. Cal. Apr. 2, 2014)……………………….……….…..…… 12

*Shapiro v. UJB Fin. Corp.,*
    964 F.2d 272 (3d Cir. 1992)…………………………………………….…..……… 11

*Shields v. Citytrust Bancorp.,*
    25 F.3d 1124 (2d Cir. 1994)………………………………………………………… 4

*In re Signet Jewelers,*
    2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018)…………….…………………….….. 11

*In re Sorrento Therapeutics Inc. Sec. Litig.,*
    2021 WL 6062943 (S.D. Cal. Nov. 18, 2021)…………………………………….… 3

*South Ferry LP, No. 2 v. Killinger,*
    542 F.3d 776 (9th Cir. 2008)…………………….……………………………….… 6

*In re Splash Techs. Holdings Inc.,*
    160 F. Supp. 2d 1059 (N.D. Cal. 2001)…………………………………………… 13

*In re Talis Biomedical Corp. Sec. Litig.,*
    2022 WL 17551984 (N.D. Cal. Dec. 9, 2022)……………………………………….. 11

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.,*
    551 U.S. 308 (2007)……………….…………………………………………… 3, 4

*Veal v. LendingClub Corp.,*
    423 F.Supp.3d 785 (N.D. Cal. 2019)……………………………………………..... 8

*In re VeriFone Sec. Litig.,*
    2014 WL 3920322 (N.D. Cal. Aug. 8, 2014)……………………………………… 14

*Webb v. SolarCity Corp.,*
    884 F.3d 844 (9th Cir. 2018)…………………….……………………………….... 5

*Wochos v. Tesla, Inc.,*
    985 F.3d 1180 (9th Cir. 2021)……………………………………………………… 8

*In re Yahoo! Inc. Sec. Litig.,*
    2012 WL 32872819 (N.D. Cal. Aug. 10, 2012)…………………………..……….. 12

**Statutes**

15 U.S.C. § 78u-4(b)…………………………………………………………………… 9

**Other Authorities**

H.R. Rep. No. 104-369 (1995)…………………………………………………........ 8

**TABLE OF ABBREVIATIONS**

| Abbreviation | Meaning |
|---|---|
| Amended Complaint or ¶ | Plaintiff's First Amended Complaint for Violations of the Federal Securities Laws, filed December 5, 2023 (ECF No. 39) |
| Bear Cave report | "Problems at TriplePoint Venture Growth BDC (TPVG)," published May 2, 2023 by the Bear Cave |
| Defendants | James P. Labe, Christopher M. Mathieu, Sajal K. Srivastava, TriplePoint Venture Growth BDC Corp. |
| Ex. __ | Exhibits to the Declaration of Carl Hudson in Support of Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 48-1) and to the Declaration of Carl Hudson in Support of Defendants' Reply in Support of Motion to Dismiss Amended Complaint |
| Individual Defendants | James P. Labe, Christopher M. Mathieu, and Sajal K. Srivastava |
| Motion or MTD | Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 48) |
| Opposition or Opp. | Plaintiff's Opposition to Defendants' Motion to Dismiss the First Amended Complaint and Objection to Defendants' Request for Judicial Notice (ECF No. 50) |
| Plaintiff | Derek Petersen |
| PSLRA | Private Securities Litigation Reform Act |
| RJN | Defendants' Request for Judicial Notice in Support of Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 49) |
| TriplePoint or the Company | TriplePoint Venture Growth BDC Corp. |

Emphasis is added unless otherwise noted.  Certain quotation marks, alteration marks, citations, and emphases have been omitted.

**INTRODUCTION**

Plaintiff's Opposition highlights exactly why this lawsuit should be dismissed. The Complaint fails to plead any element of a federal securities claim: scienter, falsity, or loss causation. Aware of these deficiencies, Plaintiff already seeks leave to amend. *See* Opp. at 25 n.16.

**No Scienter.** It is elementary that without pleading the relevant state of mind—scienter—a Plaintiff cannot allege fraud. Under the federal securities regime, in order to ensure market stability and elimination of spurious lawsuits, Congress and the Supreme Court require that the inference of scienter be at least as compelling as alternative, innocent explanations. Plaintiff does not come anywhere close to this standard. His thesis is simple: a handful of TriplePoint's borrowers experienced insolvency or other events and TriplePoint and its executives must have known of these events in advance. How, we are not told. Merely pointing, as Plaintiff does, to TriplePoint's information rights does not mean that basic financial statements alerted TriplePoint not only that the borrower was distressed, but that such distress would result in its inability to recover the loan.

This does not add up. TriplePoint discloses material events in its portfolio according to a responsible process and on the cadence required by federal securities laws, after it has evaluated how an event would affect recovery. None of TriplePoint's executives sold stock during the class period, and in fact, they personally stood to lose substantially more than Plaintiff from any adverse outcome at a borrower that would affect a recovery. In fact, one Defendant purchased more TriplePoint stock during the proposed class period. If this were fraud, it would be one of the strangest in history.

**No Falsity.** The same is true with respect to Plaintiff's failure to identify any material false statements. He quibbles that TriplePoint should have disclosed risk as actual events, even absent contrary information. He complains about the fair value of TriplePoint's loans, but does not actually plead that any accounting rules were violated or that TriplePoint's independent valuation firms did anything wrong. Finally, Plaintiff simply points to a number of bankruptcies, hoping to misdirect the Court's attention from the reality that TriplePoint is a secured lender, typically in first position to recover, ahead of other creditors. Its business model takes insolvency risk into account, and being a secured lender sets TriplePoint up to be repaid before other creditors, in the event of bankruptcy.

**No Loss Causation.** No wonder that, with these deficiencies in logic and fact, the Complaint

also fails to plead another key element of the claim: loss causation. The stock did not collapse, in one instance it rose, and no market analysts noted any wrongdoing. The only person seeing securities fraud is Plaintiff. Unable to plead facts, he urges the Court to blind itself to reality and refuse to take judicial notice of the facts that Plaintiff left out of the Complaint. The Supreme Court instructed, however, that judicial notice is required in securities class actions when the relevant facts create a nonculpable inference. *Infra* 3. The same applies here. The lawsuit should be dismissed.

## ARGUMENT

### I. PLAINTIFF FAILS TO SAVE HIS DEFICIENT SCIENTER ALLEGATIONS

#### A. Plaintiff Abandons His Failed Scheme Claim

Plaintiff failed to plead scienter for his scheme claim (MTD at 21 n.4) and accordingly drops all reference to it. *Compare* ¶¶ 260-61 (referring to "scheme"), *with* Opp. (no scheme mentioned). Plaintiff does not escape the other scienter failures in his Opposition.[1]

#### B. Plaintiff Asserts Only Boilerplate Motive and Opportunity Allegations

##### 1. Plaintiff ignores Defendants' motives to accurately record loans

Plaintiff ignores that it would have **made no sense** for Defendants to state loan values inaccurately, given their overwhelming contrary motives. Opp. at 20-22. He does not address that:

- Defendants' lack of any stock sales, and Mr. Mathieu's *purchases* of stock,[2] within the class period contradict any motive to defraud (MTD at 19);
- Each Defendant's large stock holdings aligned their incentives with those of investors (MTD at 18-19); and
- Had Messrs. Labe and Srivastava willfully made and touted poor loans, that would have reduced TPVG's investment income and thus TPA's Incentive Fee[3] to their detriment (MTD at 19-20).

---

[1] Plaintiff again does not even attempt to plead the scienter of Defendant Mathieu, meriting dismissal. *See* MTD at 15 n.3. Stunningly, outside of the caption, Mr. Mathieu's name *does not even appear* anywhere in the Opposition. *See generally* Opp.

[2] Here, as in *Mahapatra v. Truecar, Inc.*, no Individual Defendants sold stock and one purchased stock, undercutting Plaintiff's argument against its application. 2015 WL 12552062 (C.D. Cal. Dec. 9, 2015). Not only did *Mahaptra* dismiss "vague allegations of access to unspecified information" (*id.* at *2) like those in the Amended Complaint (*infra* 4–5), *Mahaptra* also dismissed scienter allegations because "[t]he Ninth Circuit has long considered an individual defendant's stock trading history where it raises competing inferences of nonculpable conduct." 2015 WL 12552062, at *2.

[3] Plaintiff does not support that "the benefits [Messrs. Labe and Srivastava] accrued from the management fees paid to TPA far outweighed the value of their individual ownership in TPVG." Opp. at 21 n.13. He downplays TPA's separate Incentive Fee, which, along with their significant TPVG shareholdings, aligns Messrs. Labe and Srivastava's interests with investors'. Opp. at 2.

DEFENDANTS' REPLY ISO MTD                                    2
CASE NO. 3:23-CV-02980-TLT

Plaintiff dismisses these facts as "improper counter-narratives." Opp. at 21. But the Supreme Court requires that courts "take into account plausible opposing inferences" and "consider . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322-23 (2007); *see also* RJN at 1. The lack of any *substantive* response to these non-culpable motives contradicts a scienter finding.[4]

### 2. Plaintiff concedes he alleges normal business motives, not fraud

Plaintiff admits that Ninth Circuit courts have held the motives he does allege are non-culpable, normal business goals.[5] Opp. at 21 & n.12. Plaintiff superficially distinguishes *Glazer Capital Management LP v. Magistri,* arguing it concerned a merger (*id.*), while overlooking the court's ruling that "personal profit motive," including motive to "maintain or increase compensation" does not establish scienter. 549 F.3d 736, 748 (9th Cir. 2008). That holding clearly applies to and dispenses with one alleged motive. ¶¶ 233-36 (alleging motive of "higher base management fee"); Opp. at 20 (same). Plaintiff also tries to distinguish *In re Sorrento Therapeutics Inc. Sec. Litig.* 2021 WL 6062943, at *8 (S.D. Cal. Nov. 18, 2021). He argues that defendants there "had motive to raise the stock price (a much more banal corporate motive)" (Opp. at 21 n.12), but that "banal" motive is exactly what Plaintiff too alleges. ¶¶ 246-47 (alleging "TPVG benefitted from an elevated share price" in alleging motive to profit from second public offering); Opp. at 20-21 (same). Plaintiff also *confirms* that meeting debt repayment requirements is a standard business motive. *See* ¶¶ 240-45 (alleging that Defendants had motive to "avoid . . . risk[ing] a default under the Credit Facility and/or the Notes").

Plaintiff's boilerplate allegations fare no better even when viewed "holistically," as he urges the Court to do. Opp. at 21. The Ninth Circuit and courts in this District reject weak motive and

---

[4] Plaintiff also overstates and distorts Messrs. Labe and Srivastava's role on the TPA Investment Committee, conflating their roles with the recommendation of TPVG's independent Valuation Committee and approval of TPVG's independent Board. *Compare* Opp. at 18, *with* MTD at 4-5, 21.

[5] Plaintiff's citation to *Abrams v. Blackburne & Sons Realty Capital Corp.* is inapposite. 2019 WL 8640656 (N.D. Cal. Dec. 2, 2019). Motive was one part of the scienter allegations there, including the defendants' reliance on an inexperienced appraiser that "recycled" a prior appraisal. *Id.* at *11. Plaintiff does not (and cannot) allege the incompetence of the experts Defendants used to assess loan values; namely, third party valuation firms, the Valuation Committee and Board, and Deloitte in its review of TPVG's fair valuation methodology. MTD at 21.

DEFENDANTS' REPLY ISO MTD                           3
CASE NO. 3:23-CV-02980-TLT

opportunity allegations even when considered in aggregate. *E.g.*, *In re Rigel Pharms, Inc. Sec Litig.*, 697 F.3d 869, 884 (9th Cir. 2012) (dismissing motive allegations "given the holistic approach to assessing scienter adopted in *Tellabs* and the requirement that we take into account plausible opposing inferences,"); *Lopes v. Fitbit, Inc.*, 2020 WL 1465932, at *12 (N.D. Cal. Mar. 23, 2020) (Tigar, J.) ( dismissing complaint after "[v]iewing the scienter allegations holistically" because "there [wa]s no allegation of improper stock sales by any individual defendant during the class period").

### 3. Plaintiff disregards contrary evidence to allege opportunity

Plaintiff baselessly asserts that "Defendants have substantially more influence over . . . valuations than their brief suggests." Opp. at 22. But Plaintiff ignores the role of third-party valuation firms, the independent Valuation Committee, and the Board, which determine values, and Deloitte's review of loan valuation methodology. MTD at 21. He also ignores case law—and cites none in response—that lacking opportunity to misstate prevents a finding of scienter. *Id.*; *Shields v. Citytrust Bancorp.*, 25 F.3d 1124, 1130 (2d Cir. 1994) (affirming dismissal where plaintiff "fail[ed] to allege a sufficient opportunity to derive a benefit from the alleged misstatements and nondisclosures: the ordinary course of bank business would lead to the review of the loan portfolios").

Plaintiff then imagines a board—despite its demonstrated independence (MTD at 4)—completely beholden to Messrs. Labe and Srivastava. Opp. at 22. TriplePoint's loan valuation process (*see* MTD at 4, 21 (majority-independent Board determines valuation)) contradicts Plaintiff's vague allegations of Messrs. Labe and Srivastava's "influence." *See* ¶ 236; Opp. at 22. Nor does Plaintiff plead the opportunity to make misstatements in SEC filings or credit watch lists (Opp. at 22) which are driven by those independently determined loan values.

### C. Plaintiff Does Not Allege What Information Defendants Accessed

Plaintiff also fails to rehabilitate his contrived access to information allegations. Opp. at 18-20. Plaintiff does not dispute that these allegations require the assumption that the terms in one cited loan agreement apply to *all* TPVG loans. MTD at 16-17. He simply suggests that the agreement is partially corroborated by Defendants' public statements and notes this was all he could obtain "pre-discovery." Opp. at 18 n.10. These are not acceptable excuses: the PSLRA "requires that a complaint state with particularity *facts* giving rise to a strong inference that the defendant acted

DEFENDANTS' REPLY ISO MTD
CASE NO. 3:23-CV-02980-TLT

4

with the required state of mind." *Webb v. SolarCity Corp.*, 884 F.3d 844, 850 (9th Cir. 2018).

Even with respect to the single loan agreement he cites, Plaintiff does not plead with particularity that Defendants *actually received* "specific materials from each Portfolio Company." Opp. at 19. He only alleges general *types* of information—monthly financial statements, monthly reports of material contingencies, monthly copies of board packages, and "budget and business plan[s]" to which Defendants were allegedly entitled access. *Id.* Further, he does not show that any of these documents would have shown both the existence of material issues at any of the portfolio companies and the quantifiable impact on repayment of TriplePoint's loan.

Ultimately, Plaintiff's claim fails to satisfy clear Ninth Circuit precedent that the "power and authority" to obtain certain information "does not establish" that any Defendant "knew about it." *See* MTD at 16 (citing *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1109 (9th Cir. 2021)). And whereas in *Prodanova*, plaintiffs at least alleged access to a specific report (993 F.3d at 1108-09), Plaintiff does not. Opp. at 19. Plaintiff also selectively reads *Hoang v. ContextLogic, Inc.* to avoid its dispositive negative impact on his case. 2023 WL 6536162 (N.D. Cal. Mar. 10, 2023). There, plaintiffs similarly could only describe the *types* of reports the defendants "had access to[:] MAU reports, Gross Merchandize Value ("GMV") historical data, and P&L reports." *Compare* Opp. at 20, *with Hoang*, 2023 WL 6536162, at *4, 22. The court dismissed these as "[g]eneral allegations of access to data . . . insufficient to support an inference of scienter." *Id*. at *22.

Last, Plaintiff tries to contest the far more reasonable inference that borrowers were not transparent with TriplePoint. Opp. at 20. But he only repeats that Defendants "were aware" of problems, or there was "ample evidence" of them, despite never pleading *how* such evidence was available. *Id.* This wrongly places the burden on Defendants to prove they *were not* aware; it is Plaintiff's burden to plead Defendants *were* aware: "The twin dictates of Rule 9(b) and the PSLRA *impose a burden on the plaintiff* to plead both falsity and *scienter with particularity*. *Barnes v. Edison Int'l*, 2021 WL 2325060, at *8 (C.D. Cal. Apr. 27, 2021) (dismissing complaint).

### D. Plaintiff Cannot Resuscitate His Boilerplate Core Operations Allegations

Plaintiff's perfunctory core operations argument that the health of portfolio companies was the "*most important* factor in determining TPVG's own performance" (Opp. at 22) fails to address

*any* of the cases holding that mere importance is not enough.  MTD at 22.  As Judge Davila explained, "[i]n most securities fraud cases, the topics about which a company allegedly misled the market will be important to [a] company and to investors, so ***importance***, without more, is not the 'rare circumstance'" where core operations contribute to scienter.  *In re Intel Corp. Sec. Litig.*, 2023 WL 2767779, at *24 (N.D. Cal. Mar. 31, 2023).  Plaintiff's boilerplate citation (Opp. at 22) to *South Ferry LP, No. 2 v. Killinger* only states that a court ***may consider*** the core operations inference.  542 F.3d 776, 784-85 (9th Cir. 2008).  He does not show why ***his*** core operations argument is persuasive.

Finally, Plaintiff's attempt to distinguish *City of Dearborn Heights Act 345 Pol. & Fire Ret. Sys. v. Align Tech.*, where the court rejected a core operations inference, only confirms its applicability.  856 F.3d 605, 613-14 (9th Cir. 2017).  As in *Align* (*id.* at 620), all alleged issues occurred "at a separate company."  Opp. at 22.  Further, Plaintiff agrees that no *Align* defendant "personally accessed" any Cadent information (*id.* at 22) and likewise is not able to plead Defendants accessed the relevant information at portfolio companies.  *See supra* 4–5.  Plaintiff attempts to avoid his pleading burden by stating "Defendants cannot, on the one hand, tout the rigor of their monitoring approach  . . . while disclaiming any knowledge of the Portfolio Companies' operations on the other."  Opp. at 23.  But this is not the standard: *Plaintiff* must allege Defendants' knowledge with particularity, a significant undertaking for the core operations inference.  *See Carr v. Zosano Pharma Corp.*, 2021 WL 3913509, at *12 (N.D. Cal. Sept. 21, 2021) (dismissing complaint where "[p]laintiffs . . . ha[d] not carried the heavy burden imposed by the core operations doctrine").

## II.    PLAINTIFF FAILS TO PLEAD ANY FALSE OR MISLEADING STATEMENTS

### A. TriplePoint's Business Model Incorporates Bankruptcy Risk

Unable to meet the PSLRA's stringent standard for pleading securities fraud, Plaintiff resorts to a different tactic: littering the Opposition with references to bankruptcies at TriplePoint's portfolio companies.  *See, e.g.*, Opp. at 6–8, 10, 13, 18.  But Plaintiff again misconstrues or altogether ignores key facts.  TriplePoint's business is making secured loans to companies that are both high growth ***and*** high risk, often not having become profitable.  MTD at 2.  As with all venture lenders, TriplePoint is therefore no stranger to insolvency risk affecting companies in which it has invested.  And it clearly disclosed the risk that "[a] bankruptcy filing by one of our portfolio companies may adversely and

permanently affect our investment in that company." Suppl. Ex. 2 at 42. But TriplePoint is prepared for that potential outcome: for all of its loans, TriplePoint is a *secured lender*, meaning that it has a better chance of repayment respective to other creditors even if the borrower goes bankrupt. *See id.* at 6–7.[6] Plaintiff ignores that TriplePoint has *successfully recovered distressed loans, including*:

- **RenoRun:** TriplePoint was *fully repaid* in Canadian bankruptcy proceedings.
- **The Pill Club:** Another company assumed *all* of The Pill Club's liabilities to TriplePoint, after a Chapter 11 bankruptcy filing.
- **Virtual Instruments:** TriplePoint fully recovered its loan following debt restructuring.
- **Hired:** Loan fully recovered following an insolvency proceeding.

Finally, Plaintiff claims that collectibility is irrelevant because TriplePoint's later write-downs "confirm that numerous loans were in fact impaired." Opp. at 13. This is little more than fraud by hindsight. *Infra* 10. Accounting rules do not necessarily predict a specific outcome after all legal rights and remedies have been exercised. Indeed a loan impairment is not tantamount to a lost investment, or means that the loan amount cannot be recovered in bankruptcy. Plaintiff similarly ignores that the maturity date for many of TriplePoint's loans has not even occurred. MTD at 11 (citing ¶¶ 182, 189). It is therefore premature for Plaintiff to deem them permanently "impaired."

### B. No Legal Authority for Conclusion that Fair Value Estimates Were False

#### 1. Plaintiff attempts to evade subjective falsity requirement

Plaintiff concedes that fair value estimates are opinion statements and therefore subject to *Omnicare's* standard for challenging such statements. Opp. at 12. But Plaintiff ignores Ninth Circuit precedent by dismissing the subjective falsity requirement as *optional*. *Id.* at 14 (characterizing subjective falsity as "just another variation on [Defendants'] flawed scienter argument"). Not so. *Align* provides a clear, two-part test: To challenge opinions, Plaintiff must allege with particularity (1) objective *and* (2) subjective falsity at the time of that statement. 856 F.3d at 614.

Plaintiff may not evade the subjective falsity requirement by faulting TriplePoint for providing incremental investments to its portfolio companies, *thus seeking to protect its investments*

___

[6] Plaintiff betrays his confusion of TriplePoint's loan structure by focusing on its purported "junior loans" to Medly. Opp. at 5, 13. But whether any of TriplePoint's *secured* loans were "junior" to more "senior" secured loans does not make them less secured (i.e., less likely to be repaid). As Plaintiff concedes, TriplePoint was a "relatively senior [secured] lender" in many cases. ¶ 62.

*and those of TriplePoint's shareholders.* Opp. at 14 (criticizing TriplePoint's "efforts to plug holes in sinking ships"). Congress enacted the PSLRA to *protect investors*. H.R. Rep. No. 104-369 at 31-32 (1995). Plaintiff's only retort is to speculate (with no legal authority) that "the stronger inference is that [Defendants] were simply taking a calculated risk that 'doubling down' offered the best odds of mitigating overall losses." Opp. at 14. Again, the law of this Circuit is clear: such loans evince a continued subjective belief in the value of the loan. *See* MTD at 13.

> **2.   Plaintiff still fails to plead that fair value estimates were objectively false**

**Plaintiff confirms he pleads mere disagreement with TriplePoint's fair value estimates.** Plaintiff is unable to plead particularized facts that TriplePoint's fair value estimates were *wrong*. MTD at 9-12; *see Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1188 (9th Cir. 2021) (under the PSLRA, Plaintiff must "specify the reason or reasons why the statement is misleading"). So Plaintiff summarily asserts that unfortunate outcomes at certain of its portfolio companies "call[s] into question" TriplePoint's fair value estimates. Opp. at 13.[7] Although Plaintiff cites no legal authority and distinguishes *none* of Defendants' nine cases (*see id.* at 12-14), he faults Defendants for "cit[ing] no authority" that requires Plaintiff to plead "a specific alternate value" for its loans. *Id.* at 13. Plaintiff's disagreement with TriplePoint's fair value estimates pleads even less than in *Peters v. Colony Credit Real Estate, Inc.*, where the court held that, *even where plaintiff did plead a specific alternative value* for a debt investment, plaintiff failed to "show that Defendants' application of their evaluation methods was fraudulent or that they knew their application was potentially misleading, let alone fraudulent." 2021 WL 4813762, at *6 (C.D. Cal. June 7, 2021).

**Auditor's review of fair valuation undermines fraud theory.** Plaintiff has no response to Defendants' authority that an independent auditor's review of TriplePoint's fair value methodology directly "undermin[es] [Plaintiff's] theory of widespread fraud." *See* MTD at 10 (citing *Bajjuri v. Raytheon Techs. Corp.*, 2023 WL 3650554, at *8 (D. Ariz. May 25, 2023)). Instead, Plaintiff

---

[7] Plaintiff claims that "Defendants concede that Plaintiff adequately pleads the 'who, what, when, and where' of each of their alleged fraudulent statements[,]" but his citation to "*see* p. 1, *supra*" is unintelligible. Opp. at 13. Plaintiff also directs the Court to "accept[] [his] factual allegations as true and draw[] the reasonable inferences therefrom in his favor." *Id.* at 2. But "the Court need not accept as true allegations that . . . are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Veal v. LendingClub Corp.*, 423 F.Supp.3d 785, 801 (N.D. Cal. 2019).

DEFENDANTS' REPLY ISO MTD                          8
CASE NO. 3:23-CV-02980-TLT

disregards the PSLRA to flip the burden onto **Defendants** to cite "evidence that its outsider valuers … had access to the same inside information about each Portfolio Company."  Opp. at 13; *see* 15 U.S.C. § 78u-4(b).  But Plaintiff still alleges no "inside information."  *See supra* 4–5.  Finally, despite having ignored **TriplePoint's** risk disclosures (Opp. at 10–12), Plaintiff asserts that **its auditor's similar disclosures** warning that fair values turn on "unobservable inputs" (Suppl. Ex. 2. at 77) renders its review irrelevant.  Opp. at 13.  Plaintiff only proves Defendants' point: (1) Fair valuation is not an exact science; and (2) TriplePoint disclosed and updated its fair value estimates based on information it actually received from portfolio companies.  MTD at 7–8.[8]

### 3.  Fair value estimates are forward looking even if incorporating current values

Plaintiff's assertion that fair value estimates are not forward-looking because they reflect "**current** asset or revenue values" is wrong.  Opp. at 14.[9]  In *In re Invensense, Inc. Securities Litigation*, Judge Donato found that a company's gross margin and its underlying assumptions were forward-looking where, as here, they "were couched as statements of expectations."  2016 WL 1182063, at *6–7 (N.D. Cal. Mar. 28, 2016).  He explicitly "reject[ed]" the argument—**identical to Plaintiff's own**—that such statements were "purportedly predicated on then-known and current facts" and thus not forward-looking.  *See also City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*, 963 F.Supp. 2d 1092, at *1124 (E.D. Wash. Aug. 5, 2013) (statements regarding loan portfolio health were forward-looking because they depended on future events).   Plaintiff has no response to Defendants' cases, which show that TriplePoint's specific warnings accompanying its fair values far

[8] Plaintiff's claim that "only 25% of TPVG loans were guaranteed to be independently reviewed by outside valuers in any given quarter" is misleading.  Opp. at 13.  TriplePoint's independent auditor issued its opinion on financial statements based on "evaluat[ing] the appropriateness of the [fair] valuation **techniques**," irrespective of individual fair value estimates.  Suppl. Ex. 2 at 78.

[9] Plaintiff also outright misstates the fair value of certain of TPVG's loans.  For example, Plaintiff claims the fair values of TriplePoint's May 18, 2022, June 19, 2022, and August 5, 2022 loans to Underground Enterprises were (in thousands) $2,192, $1,473, and $2,190, respectively, but the actual fair values were $2,233, $1,501, and $2,241.  *Compare* ¶ 205, *with* Suppl. Ex. 2 at 84.  Likewise, Plaintiff claims the fair values of TriplePoint's December 28, 2021 and August 4, 2022 loans to Demain (Luko) were $4,215, $5,269, and $7,143, respectively, but the actual fair values were $4,221, $5,277, and $7,264.  *Compare* ¶ 205, *with* Suppl. Ex. 2 at 88.  "Fundamentally mischaracterizing" purported false statements in this way calls into question the Complaint's reliability.  *In re Amarin Corp. PLC Secs. Litig.*, 2016 WL 1644623, at *11, 19 (D.N.J. Apr. 26, 2016) (dismissing complaint where "Plaintiff completely mischaracterizes the nature of Amarin's alleged false statement").

DEFENDANTS' REPLY ISO MTD                              9
CASE NO. 3:23-CV-02980-TLT

exceed the required "meaningful cautionary language" to trigger the safe harbor.  *See* MTD at 13 (citing *Intuitive Surgical*, 759 F.3d 1051, 1059 and *Cutera*, 610 F.3d 1103, 1112 (9th Cir. 2010)).

### C.  No False Statements About TriplePoint's Investment Quality

#### 1.  The Ninth Circuit bars fraud by hindsight

Addressing none of Defendants' four authorities—including the Ninth Circuit's ruling in *Daou* (MTD at 14)—Plaintiff proclaims that he "alleges that Defendants were routinely provided with inside information" in order to try to overcome his impermissible fraud by hindsight argument. Opp. at 15.  But *what* "inside information" Plaintiff alludes to is a mystery.  *Supra* 4–5.  Again, Defendants cautioned investors that they possessed no "inside information" beyond that which its portfolio companies affirmatively disclosed.  *Infra* 12.  *Kniss v. Booth* is directly applicable: "Plaintiff's almost *exclusive reliance on the subsequent bankruptcy proceedings*" in order to argue contemporaneous knowledge "reads as an impermissible attempt to plead 'fraud by hindsight.'" MTD at 14 (citing 2010 WL 11506619, at *11 (C.D. Cal. Jan. 4, 2010)).[10]

#### 2.  "Quality" statements are incapable of objective verification

Plaintiff states, as a matter of law, that "'high quality' statements are actionable . . . in the context of a corporation whose entire business is based on its lending activities."  Opp. at 15.  Again, where is Plaintiff's authority?  *In re Countrywide Financial*, which Plaintiff provides as an "example," was an "extraordinary case" in the context of the mortgage-backed lending crisis of 2006-2008.  588 F. Supp. 2d 1132, 1144 (C.D. Cal. Dec. 1, 2008).  The court held that "descriptions such as 'high quality' are generally *not* actionable."  *Id.* at 1186.  But Countrywide's practices, which included "approving highly risky loans for sale," "so departed from its public statements that even 'high quality' became false or misleading."  *Id.*[11]  In contrast, TriplePoint acted in its shareholders' best interests by taking steps to mitigate losses amidst the venture growth crisis.  *See supra* 6–7.

---

[10] *Freudenberg v. E\*Trade Financial Corp.*, 712 F. Supp. 2d 171, 191-92 (S.D.N.Y. 2010) supports Defendants' point.  "It is *not* 'fraud by hindsight' when statements related to a loan's existing quality and risks were false and misleading *when made*" (*id.* at 191), but Plaintiff alleges no such facts.

[11] *In re New Century* instead involved egregious facts specific to the 2006–08 lending crisis.  *See* 588 F. Supp. 2d 1206, 1211–13 (C.D. Cal. 2008).  *In re Signet Jewelers*, in turn involved particular allegations that Signet made "changes to its credit decision engine," yet stated that "we don't change the way that we measure [credit]."  2018 WL 6167889, at *2–3 (S.D.N.Y. Nov. 26, 2018).

Plaintiff's remaining cases predate the PSLRA and thus have been abrogated by Congress. *See* Opp. at 16 (citing *Durning v. First Bos. Corp.*, 815 F.2d 1265, 1268 (9th Cir. 1987) and *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 283 (3d Cir. 1992)). With no applicable caselaw, Plaintiff's assertion that the Ninth Circuit's ruling in *Cutera* does not apply is meritless. Opp. at 16 n.8; MTD at 14-15 (citing 610 F.3d at 1111). *Cutera*'s recent progeny holds that "quality" statements like those challenged here are inactionable. *See In re Talis Biomedical Corp. Sec. Litig.*, 2022 WL 17551984, at *27 (N.D. Cal. Dec. 9, 2022) (statement that "our results look terrific" constituted "inactionable vague corporate optimism"); *Berg v. Velocity Fin. Inc.*, 2021 WL 268250, at *3-4 (C.D. Cal. Jan. 25, 2021) (statements "extolling" a company's "disciplined due diligence" were inactionable).[12]

### D. Plaintiff's Challenge to TriplePoint's Risk Disclosures Misses the Point

#### 1. "Timing" of disclosures is irrelevant

Aware that TriplePoint amply disclosed both *future* and *contemporaneous* risks to its portfolio companies (MTD at 7-8), Plaintiff resorts to quibbling with the precise ***timing*** of TriplePoint's disclosures.[13] *See, e.g.*, Opp. at 11 (criticizing TriplePoint's purported "fail[ure] to make timely credit and loan value downgrades" and for delaying "disclosures until bankruptcies ***had already occurred***.") But the notion that the securities laws would require a company to announce a bankruptcy of a portfolio company ***before it even goes bankrupt*** is absurd. Plaintiff asserts that "common sense confirms that 'high quality' companies do not 'blow up' overnight." *Id.* at 11. But Plaintiff's own allegations are that that is exactly what happened to certain of TriplePoint's portfolio companies in the midst of the venture growth market's sudden downturn. *E.g.* ¶¶ 70 (Medly affected by "MidCap's eleventh-hour decision to pull out"); 97 (Hi.Q's condition deteriorated when it "began mass layoffs the very next day" after losing a motion for summary judgment). *See also* MTD at 5-6.

Crucially, Section 10(b) "liability does not arise where disclosure was made within a 'reasonable time.'" *In re Yahoo! Inc. Sec. Litig.*, 2012 WL 32872819, at *22 (N.D. Cal. Aug. 10,

---

[12] Plaintiff concedes that "statements about the quality of TriplePoint's portfolio are also protected as both statements of opinion and as forward-looking statements." MTD at 15 n.2.

[13] Plaintiff also asserts that Defendants "ignore the basic rule that to warn of risks provides no defense to a failure to disclose that such 'risks' have ***already*** substantially materialized." Opp. at 1; *see also id.* at 11. But Defendants explicitly argued that TriplePoint ***"disclos[ed] exactly what Plaintiffs claim [Defendants] omitted."*** MTD at 8.

2012). In *Yahoo!*, the court held that Yahoo's disclosure—**5 weeks** after it received notice of a restructuring—was timely because "there were many avenues of response open to Yahoo following receipt of this news and it was reasonable to . . . come to a tentative decision prior to announcing the news to the market." *Id.* at \*23. Here, Plaintiff never even alleges that TriplePoint **actually received** information contradicting its fair value estimates. MTD at 12. Defendants also cautioned that "[i]f we are unable to uncover all material information about these companies, we may not make a fully informed investment decision[.]" *Id.* These facts make the timing of TriplePoint's disclosures (e.g., disclosing Medly's bankruptcy just **three days** after it filed) even more reasonable than in *Yahoo!*.[14]

### 2. TriplePoint's disclosures were the opposite of boilerplate

Plaintiff next attacks TriplePoint's disclosures as "boilerplate" (Opp. at 11) but fails to meaningfully address any of Defendants' detailed disclosures. *See* MTD at 5, 7-8, 12. Had Plaintiff done so, he would have to concede that TriplePoint's disclosures are even stronger than in *Seaman v. California Business Bank*. *See* 2014 WL 1339649, at \*7 (N.D. Cal. Apr. 2, 2014). TriplePoint did more than "warn[] of the general ***possibility*** of a decline in the performance of [CBB's] loans" (*id.*), but provided updates tracking its portfolio companies' financial health.[15] MTD at 7–8.

### 3. Plaintiff still pleads no duty to disclose additional information about TriplePoint's portfolio companies

Plaintiff yet again draws a legal conclusion with no legal authority. Opp. at 12 ("[D]isclosure of 'other' facts is typically not an issue where a statement affirmatively misstates [] asset values or credit-ratings"). No such law exists. Nor is it sufficient to proclaim (with no citations) that "Plaintiff alleges specific omitted facts that were inconsistent with Defendant's positive statements about their portfolio." *Id.* at 12 n.4. As in *Pivotal*, Plaintiff points to "nothing in the challenged statements [that] affirmatively created an impression" that TriplePoint did *not* face risks intrinsic to the venture debt

---

[14] *Berson v. Applied Signal Technology, Inc.* is distinguishable because, there, witnesses alleged that the company **actually received** stop-work orders that caused work to be "at serious risk of being canceled altogether," rendering its reported backlog false. 52 F.3d 982, 986 (9th Cir. 2008).

[15] The *Questor* court instead rejected a company's "boilerplate disclosures about the potential risk of decreased insurance reimbursement" despite "enthusiastic reassurances" that coverage "would remain high." *In Re Questcor Sec. Litig.*, 2013 WL 5486762, at \*13 (C.D. Cal. Oct. 1, 2013). The *Livid Holdings, Ltd. v. Salomon Smith Barney, Inc.* court held that the "most obvious interpretation" of a company's purported disclaimer that it **had not** yet received $25 million raised in a private placement was that "the [$25,000] cash **had** already been received." 416 F.3d 940, 947 (9th Cir. 2005).

DEFENDANTS' REPLY ISO MTD                    12
CASE NO. 3:23-CV-02980-TLT

industry.  *See* MTD at 9 (citing 2020 WL 4193384, at *12 (N.D. Cal. July 21, 2020)).

### E.  "Risk Rating" Argument Reveals Plaintiff's Confusion

Plaintiff accuses Defendants of "effectively ignoring" and thus "conceding" the falsity of purported "risk rating" statements.  Opp. at 18.  But Plaintiff engages in impermissible puzzle pleading, leaving it to Defendants to "try to figure out exactly what the misleading statements are, and to match the statements up with the reasons they are false or misleading."  *Primo v. Pac. Biosci. of Cal., Inc.*, 940 F. Supp. 2d 1105, 1111 (N.D. Cal. 2013) (rejecting complaint's "lengthy quotes and recitations").  Puzzle pleading violates both Rule 8 and 9 and the PSLRA.  *See In re Splash Techs. Holdings Inc.*, 160 F. Supp. 2d 1059, 1075 (N.D. Cal. 2001).  Further, like the loan quality statements, risk ratings are inactionable opinions incapable of objective verification.  *See supra* 10.

### III.    PLAINTIFF CONCEDES HE DOES NOT PLEAD CAUSATION

Ignoring Supreme Court and Ninth Circuit precedent, and citing no authority, Plaintiff argues that he need not plead loss causation with particularity.  *Compare* MTD at 22-23 (*citing Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) and *Uber*, 998 F.3d 397, 404), *with* Opp. at 24 (misrepresenting Ninth Circuit pleading requirements).[16]  He then demonstrates he is unable to do so.

### A.  Biased Short-seller Report Does Not Share New Information to the Market

Plaintiff cannot change that (1) the Bear Cave's author has "serious financial incentives to damage a company's stock price" (*Jedrzejczyk v. Skillz Inc.*, 2022 WL 2441563, at *6 (N.D. Cal. July 5, 2022)) and (2) the Bear Cave report adds no new information to the market, as a corrective disclosure must.  MTD at 23.

#### 1.  As a matter of law, Plaintiff cannot rectify Amended Complaint's sloppy allegations

Benefitting from the short positions of the Bear Cave's subscribership renders a "financial incentive to convince others to sell" that undermines its author's credibility.  MTD at 23.  Further, because Plaintiff may not use his Opposition to add new allegations "not previously specifically identified in supporting [his] assertions," his untimely effort to deny that the Bear Cave's author is a short-seller fails.  *In re VeriFone Sec. Litig.*, 2014 WL 3920322, at *4 (N.D. Cal. Aug. 8, 2014) ("it is

---

[16] Plaintiff obscures *BofI*'s requirement to "plead loss causation 'with particularity' under Rule 9(b)." 977 F.3d 781, 793-94 (9th Cir. 2020).  As in *BofI*, Plaintiff's claims warrant dismissal: they "[do] not plausibly allege[] that [short-seller] blog posts constitute[] a corrective disclosure." *Id.* at 797.

[in] the complaint, not the [O]pposition" that Plaintiff needed to identify his arguments and their factual support).[17]  The Amended Complaint failed even to allege who "Edwin Dorset" (*sic*) is—much less what stock positions he holds.  ¶ 211.  Plaintiff is too late to cure this failure now.

### 2.  The Bear Cave report adds nothing new to the market

Plaintiff's authority confirms the Bear Cave report added no new information to the market, and therefore is not a corrective disclosure.  MTD at 23.

First, Plaintiff cites a Ninth Circuit holding ***affirming dismissal for failure to plead loss causation***.  *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 840 (9th Cir. 2022).  The *Nektar* court ***reaffirmed*** the "high bar" for a short-seller report to qualify as a corrective disclosure and held that the one at issue did not, despite "pull[ing] together disparate sources and connect[ing] data in ways that were not plainly obvious[,]" as Plaintiff alleges the Bear Cave report does.  *Id.* at 839.

Next, Plaintiff implies that the Bear Cave report need not have revealed new information to the market to be a corrective disclosure, but his *Radient* citation relates to the "truth-on-the-market" defense, not to loss causation.  Opp. at 23-24.  Tellingly, Plaintiff does not deny that the Bear Cave report contained only publicly available information.  *Id.* at 23.  He also concedes that the report's only additive value was "compil[ing] [] information about [TriplePoint's] ***portfolio companies.***"  *Id.* But the report's very focus on those ***portfolio companies***, not TriplePoint itself, violates the rule that "a plaintiff must allege [fraud] in connection with transactions *in the securities . . . [he] purchased or sold*."  MTD at 25.  The law does not permit Plaintiff to recover against ***TriplePoint*** for mishaps its ***portfolio companies*** faced, and Plaintiff alleges no other "analysis" the report provides (it provides none).  Plaintiff fails to show how the report would clear the high bar *Nektar* plaintiffs could not.

### B.  Plaintiff Attempts to Shift the Burden of Alleging a Loss to Defendants

#### 1.  Plaintiff, not Defendants, must allege loss

Plaintiff may not be "requir[ed] to 'prove' statistical significance through expert reports" (Opp. at 24), but surely he can allege it.  *Uber supra* 13 (Plaintiff must particularly plead all elements of securities fraud).  Yet instead of doing so as to the stock drops he alleges, Plaintiff again attempts

---

[17] Beyond the impropriety of attempting to introduce new information omitted from his Amended Complaint, Plaintiff has not moved the Court for judicial notice on sources external to his pleadings and thus none may be taken.  *See* Opp. at 23 (citing webpage of which no judicial notice is sought).

DEFENDANTS' REPLY ISO MTD                                14
CASE NO. 3:23-CV-02980-TLT

to renege on his pleading burden. Opp. at 24. As in *Eng*, Plaintiff seeks to conflate multiple smaller stock drops following different allegedly corrective disclosures over several days. MTD at 24. Simply deflecting Defendants' arguments fails to satisfy the pleading burden that he must carry.

### 2. Plaintiff's corrective disclosures are all deficient

Ultimately, the Opposition cements that Plaintiff misunderstands the requisite "causal connection." MTD at 22. Because no allegedly corrective disclosure connects a specific alleged misstatement to a specific revelation of truth, resulting in a loss pleaded with specificity; all fail:

**Plaintiff abandons his March 1, 2023 corrective disclosure.** *See* Opp. at 23-24 (no mention of that disclosure). Plaintiff also ignores that the subsequent *rise* in TriplePoint's stock by definition fails to support a *loss*. MTD at 24. Plaintiff may no longer claim this corrective disclosure.

**Plaintiff fails to rebut that the May 2, 2023 Bear Cave report is not a corrective disclosure**—including under authority that Plaintiff himself cites—due to its lack of analysis pertaining to TriplePoint itself, rather than its portfolio companies. *Supra* 14.

**Alleging a reclassification of loans in TriplePoint's May 3, 2023 earnings release still does not explain that any *prior* statement was fraudulent *when made*.** ¶¶ 216-20. Each of Plaintiff's allegedly corrective disclosures fails to satisfy the basic requirement that the disclosure *corrected* a previous misstatement. Without a loss, Plaintiff may not recover.

### CONCLUSION

Defendants respectfully request the Court dismiss this action with prejudice.

Dated: February 14, 2024        FRESHFIELDS BRUCKHAUS DERINGER US LLP

By: */s/ Boris Feldman*
    Boris Feldman

*Attorneys for Defendants*